Lanzetta v Montefiore Med. Ctr. (2022 NY Slip Op 06554)

Lanzetta v Montefiore Med. Ctr.

2022 NY Slip Op 06554

Decided on November 17, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 17, 2022

Before: Kapnick, J.P., Webber, Friedman, Gesmer, Singh, JJ. 

Index No. 27712/19E Appeal No. 16701-,16701A-,16701B Case No. 2021-01401, 2021-03674 

[*1]Joseph Lanzetta, as Executor of the Estate of Pasquale Lanzetta, Deceased, Plaintiff-Appellant,
v
Montefiore Medical Center et al., Defendants-Respondents. 

Lazar Grunsfeld Elnadav, LLP, Brooklyn (Gerald Grunsfeld of counsel), for appellant.
Wilson Elser Moskowitz Edelman & Dicker LLP, New York (Judy C. Selmeci of counsel), for Montefiore Medical Center and Robert Potenza, M.D., respondents.
Garson & Jakub LLP, New York (Andrew Harrison of counsel), for Howard Hochster, M.D., respondent.

Order, Supreme Court, Bronx County (John R. Higgitt, J.), entered on or about March 17, 2021, which granted defendant Howard Hochster, M.D.'s motion for summary judgment dismissing the complaint and cross claims as against him, unanimously reversed, on the law, without costs, and the motion denied.
Judgment, Supreme Court, Bronx County (Doris M. Gonzalez, J.) entered September 1, 2021, granting codefendants Montefiore Medical Center (Montefiore) and Robert Potenza, M.D.'s motion for summary judgment dismissing the complaint and cross claims as against them, unanimously reversed, on the law, without costs, the judgment vacated, and the complaint reinstated as to these defendants. Appeal from order, same court and Justice, entered July 22, 2021, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
For the reasons set forth in Greenberg v Montefiore New Rochelle Hosp. (205 AD3d 47 [1st Dept 2022]), plaintiff has a cognizable claim to pursue a medical malpractice action against these defendants for pain and suffering of the decedent on the theory that their failure to follow decedent's directives in his living will and health care proxy was a departure from the standard of care, and a proximate cause of his pain and suffering.
In December 1993, decedent Pasquale Lanzetta signed a health care proxy, which appointed his wife as his health care agent, and his son, plaintiff executor Joseph Lanzetta, as an alternate. The health care proxy directed his agents to adhere to his wishes as set forth in the attached living will. In the event decedent became terminally ill, the living will directed the attending physician to withhold or withdraw treatment that serves only to prolong death; limited treatment to pain relief and other measures to maintain comfort; and declined cardiac resuscitation, mechanical respiration, antibiotics, and feeding tubes for nutrition or hydration. The living will authorized the agents listed in the health care proxy to make decisions on decedent's behalf. In July 2016, decedent sought treatment at Montefiore and completed a new healthcare proxy appointing his daughter as his health care agent, and his son as an alternate. That health care proxy directed the agent to "use any means necessary to save [his] life".
On April 7, 2017, after decedent was at Montefiore for another 20 days for treatment of another medical incident, decedent's son and attending physician defendant Dr. Hochster completed and signed a "Forgoing Life-Sustaining Treatment Including DNR" ("FLST") form. The form advised medical staff of decedent's wishes to not be resuscitated or intubated. Allegedly plaintiff was told by the defendants that decedent's condition was terminal on April 15, 2017. Decedent received medical treatment until he died on May 6, 2017.
Plaintiff commenced an action against defendants alleging medical malpractice based on the various health proxies and forms. Plaintiff claims that defendants breached their [*2]agreement with the decedent by administering antibiotics and IV Hydration from April 15, 2017 onwards that prolonged his life.
Here, there are issues of fact that preclude summary judgment. It is unclear whether the 1993 healthcare proxy (and the living will), the 2016 healthcare proxy or the 2017 FLST governed this dispute and whether the 2016 health care proxy was revoked by decedent through conversations with his agents, pursuant to Public Health Law § 2985(a). Significantly, it is not clear from the record whether the treatment prolonged decedent's life, as neither side submits an expert affidavit. There is also a question as to whether decedent's health care agents approved the very treatment for which they now seek to hold defendants liable. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 17, 2022